**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**(Eastern Division)**

In re:

**HERRING CREEK ACQUISITION**
**COMPANY, LLC,**

                    **Debtor.**

**Chapter 11**

**Case No. 14-15309-WCH**

**PLAN OF REORGANIZATION OF**
**HERRING CREEK ACQUISITION COMPANY, LLC**

MURPHY & KING, P.C.
One Beacon Street
Boston, MA  02108
Harold B. Murphy, Esq.
D. Ethan Jeffery, Esq.
John C. Elstad, Esq.

Telephone:  (617) 423-0400
Facsimile:   (617) 423-0498

Dated: January 16, 2014

Herring Creek Acquisition Company, LLC, the debtor and debtor-in-possession in the bankruptcy proceeding under docket number 14-15309-WCH, hereby proposes the following plan of reorganization under Section 1121 of the United States Bankruptcy Code.

## ARTICLE I

## DEFINITIONS AND CONSTRUCTION OF TERMS

For purposes of the Plan, the following terms shall have the meanings specified in this Article I.  A capitalized term used but not defined in the Plan that is also used in the Bankruptcy Code shall have the meaning ascribed to that term in the Bankruptcy Code.  Wherever from the context it appears appropriate, each term stated shall include both the singular and the plural, and pronouns shall include the masculine, feminine and neuter, regardless of how stated.  The words "in the Plan," "the Plan," "hereto," "herein", "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular section, sub-section or clause contained in the Plan.  The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the terms of the Plan.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions the Plan.

**1.1**     "Administrative Expense Claim" shall mean a Claim that is Allowed under Section 503(b) of the Bankruptcy Code and that is entitled to priority under Section 507(a)(1) of the Bankruptcy Code, including Professional Fee Claims.

**1.2**     "Affiliate" shall mean any Person that is an affiliate of the Debtor or the Reorganized Debtor under the Bankruptcy Code.

**1.3**     "Allowed" shall mean, with reference to any Claim or Equity Interest:

(a)     a Claim or Equity Interest that has been listed by the Debtor in its Schedules and (i) is not listed as disputed, contingent or unliquidated, and (ii) is not a Claim or Equity Interest as to which a proof of claim or interest has been filed;

(b)     a Claim or Equity Interest as to which a timely proof of claim or interest has been filed by the Bar Date and either (i) no objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery, has been made on or before any applicable deadline, or (ii) if an objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery has been interposed, the extent to which such Claim has been allowed (whether in whole or in part) by a Non-Appealable Order;

(c)     a Claim arising from the recovery of property under Section 550 or 553 of the Bankruptcy Code and allowed in accordance with Section 502(h) of the Bankruptcy Code; or

(d)     any Claim or Equity Interest expressly allowed under the Plan or pursuant to the Confirmation Order.

**1.4**    "Anderson" shall mean Porter W. Anderson, Jr. and any successors and assigns.

**1.5**    "Anderson Note" shall mean the promissory note, to be executed by the Reorganized Debtor in favor of Anderson, with a principal amount (to be finally determined at the closing of the Cove House sale) equal to the Anderson Claim less the amounts received by Anderson from the Cove House Sale Proceeds, with a term of the earlier of demand or thirty-six (36) months from confirmation of the Plan, which note shall be secured by: (a) a second priority Lien on Sanderling, (b) a first priority lien on the Flag Pole House, (c) pending its sale, a second priority Lien on Farm, (d) a second priority Lien on the Hughes Residence, and (e) a Lien on CCG's personal property.

**1.6**    "Asset(s)" shall mean any real or personal property of any Debtor, whether tangible or intangible and wherever situated, together with the proceeds thereof.

**1.7**    "Avoidance Actions" shall mean Causes of Action arising or held by the Debtor under Sections 502, 510, 541, 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code, or under related state or federal statutes and common law, including fraudulent transfer laws.

**1.8**    "Bankruptcy Case" shall mean the Debtor's Chapter 11 bankruptcy case pending in the Bankruptcy Court.

**1.9**    "Bankruptcy Code" shall mean Title 11 of the United States Code, as amended from time to time.

**1.10**    "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Massachusetts and, to the extent of any reference under 28 U.S.C. §157, the unit of the United States District Court specified pursuant to 28 U.S.C. §151.

**1.11**    "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure as promulgated under 28 U.S.C. § 2075, and any local rules of the Bankruptcy Court.

**1.12**    "Bar Date" shall mean the date fixed by an order of the Bankruptcy Court as the last date by which Persons asserting certain Claims against the Debtor must file a proof of claim or interest or be forever barred from asserting a Claim against the Debtor or its property, from voting on the Plan and/or sharing in distributions under the Plan.

**1.13**    "Beckers" shall mean William R. Beckers, Trustee of the WR & SL Beckers Revocable Trust, including any rights and Claims held by such trust, and any successors and assigns.

**1.14**    "Business Day" shall mean any day other than a Saturday, Sunday or legal holiday recognized in the Commonwealth of Massachusetts.

**1.15**    "Carveout" shall mean a carve out by Anderson, pursuant to *In re SPM Manufacturing Corporation*, 984 F.2d 1305 (1st Cir. 1993) and the agreement attached as Exhibit A, from the amount he is entitled to receive on account of the Anderson Secured Claim, in an amount sufficient to either pay in full or reserve in full pending allowance, the following Claims: (a) NEPCO's Claims, (b) Beckers' Claims, in an amount not to exceed $2,500,000.00, (c)

bankruptcy administrative Claims, in an amount not to exceed $130,000.00, and (d) General Unsecured Claims, in an amount not to exceed $65,000.00.

**1.16** "Cash" shall mean lawful currency of the United States of America (including wire transfers, cashier's checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks and money orders).

**1.17** "Cash Collateral" shall have the meaning ascribed to it in Section 363 of the Bankruptcy Code.

**1.18** "Cash Equivalents" shall mean equivalents of Cash in the form of readily marketable securities or instruments issued by a Person other than the Debtor or an Affiliate, including, without limitation, readily marketable direct obligations of, or obligations guaranteed by, the United States of America, commercial paper of domestic corporations carrying a Moody's Rating of "A" or better, or equivalent rating of any other nationally recognized rating service, interest-bearing certificates of deposit, or other similar obligations of domestic banks or other financial institutions having a shareholders' equity or equivalent capital of not less than Two Hundred Million Dollars ($200,000,000).

**1.19** "Causes of Action" shall mean, without limitation, any and all actions, causes of action, choses in action, defenses, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, Claims or proceedings to recover money or property and demands of any nature whatsoever, whether known or unknown, in law, equity or otherwise including, without limitation, Avoidance Actions.

**1.20** "CCG" shall mean The Commerce & Capital Group, LLC and its successors and assigns.

**1.21** "Claim" shall mean a claim against a Person or its property as defined in Section 101(5) of the Bankruptcy Code, including, without limitation, (a) any right to payment, whether or not such right is reduced to judgment, and whether or not such right is liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, or is fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

**1.22** "Class" shall mean those classes designated in Article III of the Plan.

**1.23** "Collateral" shall mean any property or interest in property of the Estates subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable law.

**1.24** "Confirmation Date" shall mean the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket in the Bankruptcy Case.

**1.25**   "Confirmation Hearing" shall mean the hearing before the Bankruptcy Court on confirmation of the Plan.

**1.26**   "Confirmation Order" shall mean the order of the Bankruptcy Court confirming the Plan pursuant to the provisions of the Bankruptcy Code, and any supplementary orders of the Bankruptcy Court issued in furtherance of the Plan.

**1.27**   "Contingent or Unliquidated Claim" shall mean any Claim for which a proof of claim has been filed with the Bankruptcy Court but which was not filed in a sum certain, or for which the event that would give rise to such a liability or debt has not occurred and is dependent upon a future event that has not occurred or may never occur, and which has not been Allowed.

**1.28**   "Cove House" shall mean the real property owned by the Debtor and located at 27 Butler's Creek Road, Edgartown, Massachusetts.

**1.29**   "Cove House Sale Proceeds" shall mean the Net Proceeds of the sale of Cove House pursuant to the P&S or otherwise.

**1.30**   "Debtor" shall mean Herring Creek Acquisition Company, LLC.

**1.31**   "Deficiency Claim" shall mean the amount by which the Allowed Claim of a creditor exceeds the Allowed Secured Claim of such creditor.

**1.32**   "Disclosure Statement" shall mean the disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, in the form approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

**1.33**   "Disputed Claim" shall mean:

(a)    if no proof of claim relating to a Claim has been filed, a claim that is listed in the Schedules as unliquidated, disputed or contingent; or

(b)    if a proof of claim relating to a Claim has been filed, a Claim as to which a timely objection or request for estimation, or request to equitably subordinate or otherwise limit recovery in accordance with the Bankruptcy Code and the Bankruptcy Rules, has been made, or which is otherwise disputed by one or more of the Debtor in accordance with applicable law, which objection, request for estimation, action to limit recovery or dispute has not been withdrawn or determined by Non-Appealable Order; or

(c)    a Claim that is a Contingent or Unliquidated Claim.

**1.34**   "Disputed Claim Amount" shall mean the amount set forth in the proof of claim relating to a Disputed Claim or an amount estimated pursuant to an order of the Bankruptcy Court in respect of a Disputed Claim in accordance with Section 502(c) of the Bankruptcy Code.

**1.35**   "Disputed Claims Reserve" shall have the meaning set forth in Section 6.5 of the Plan.

**1.36** "Distribution Record Date" shall mean fifteen (15) days prior to the first scheduled hearing on the approval of the Disclosure Statement or such other date established by the Bankruptcy Court.

**1.37** "Effective Date" shall mean the first Business Day after all conditions precedent to the effectiveness of the Plan set forth in Section 10.1 have been satisfied or waived by the Debtor.

**1.38** "Equity Interest" shall mean the interest of any holder of any membership interest in the Debtor, and all options and/or rights, contractual or otherwise, to acquire at any time any membership interest of the Debtor, as such interests exist immediately prior to the Effective Date.

**1.39** "Estate" shall mean the estate created in the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

**1.40** "Farm" shall mean the real property owned by the Debtor and located at 17, 19 and 23 Butler's Creek Road, Edgartown, Massachusetts.

**1.41** "Farm Sale Proceeds" shall mean the Net Proceeds of the sale of Farm pursuant to the P&S or otherwise.

**1.42** "Flag Pole House" shall mean the real property owned by the Debtor and located at 15 Butler's Creek Road, Edgartown, Massachusetts.

**1.43** "General Unsecured Claim" shall mean a Claim that is: (a) not a Secured Claim, (b) not entitled to priority of payment under Section 507 of the Bankruptcy Code, and (c) not a Claim for an Equity Interest.

**1.44** "Hughes Residence" means the residence of Robert Hughes.

**1.45** "Internal Revenue Code" shall mean Title 26 of the United States Code, as amended from time to time.

**1.46** "Insider" shall have the meaning set forth in Section 101(31) of the Bankruptcy Code, provided that it shall not include any Debtor.

**1.47** "Lien" shall have the meaning set forth in Section 101(37) of the Bankruptcy Code; except that (a) a lien that has been avoided in accordance with Sections 544, 545, 546, 547, 548, 549 or 553 of the Bankruptcy Code shall not constitute a Lien, and (b) no lien shall be valid unless approved by a Non-Appealable order of the Bankruptcy Court or by agreement of the Debtor.

**1.48** "NEPCO" shall mean New England Phoenix Company, Inc. and any successors and assigns.

**1.49** "Net Proceeds" shall mean the proceeds of any sale, transfer or other liquidation of an Asset, including the prosecution of Causes of Action, less the costs and expenses of selling,

transferring, prosecuting and/or liquidating such Asset, including, without limitation, professional fees and expenses, broker's commissions, taxes (including capital gains taxes) and closing costs.

**1.50** "Non-Appealable Order" shall mean an order or judgment which has not been reversed, stayed, modified or amended and, as to which (a) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for certiorari, review or rehearing is pending, or (b) if appeal, review, re-argument or certiorari of the order has been sought, the order has been affirmed or the request for review, re-argument or certiorari has been denied and the time to seek a further appeal, review, re-argument or certiorari has expired, and as a result of which such order shall have become final and non-appealable in accordance with applicable law; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Non-Appealable Order.

**1.51** "Organization Documents" shall mean the Debtor's operating agreement and such other documents evidencing the Debtor's formation and/or operation in such jurisdictions in which the Debtor is authorized to conduct business.

**1.52** "Owen" shall mean Walter E. Owen, as trustee of the Walter E. Owen, III 2001 Trust, including any rights and Claims held by such trust, and any successors and assigns.

**1.53** "P&S" shall mean the purchase and sale agreement between the Debtor and Dream Enterprises, LLC, a copy of which is attached as Exhibit B.

**1.54** "Person" shall mean any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated association or organization, governmental agency or political subdivision.

**1.55** "Personalty" shall mean, collectively, any and all personal property and fixtures owned by the Debtor, including, without limitation: (a) any personal property at any time attached to, located in or on, or used in connection with, the ownership or operation of the Debtor's Property, (b) all mechanical, electrical, lighting and plumbing systems, fixtures and equipment, all ventilating, air conditioning and heating systems, fixtures and equipment, all water and power systems, engines boilers, generators, furnaces, motors, landscaping and sprinkler systems and equipment, all furniture, furnishings, appliances, supplies and other personal property (tangible or intangible) of every nature and description, all maintenance equipment, tools and supplies, and all master keys, office keys and other keys used in connection with the Property, and (c) all Causes of Action.

**1.56** "Petition Date" shall mean November 12, 2014.

**1.57** "Plan" shall mean the *Plan of Reorganization of Herring Creek Acquisition Company, LLC*, including, without limitation, all exhibits, supplements, appendices and schedules to the Plan, either in their present form or as the same may be altered, amended or modified from time to time.

**1.58**   "Plan Contribution" shall mean the following contributions by the Debtor's members and/or Insiders: (a) the Cash contributed to the Plan Fund, (b) causing the Debtor's Affiliates to provide security for the Anderson Note, including the Liens on the Hughes Residence and on CCG's personal property, and (c) the subordination of Robert Hughes' General Unsecured Claim.

**1.59**   "Plan Fund" shall mean bi-annual contributions of $50,000.00 from the Debtor's members, to be made until the General Unsecured Creditors are paid in full.

**1.60**   "Plan Supplement" shall mean the compilation of documents and forms of documents in support of the Plan that will be filed with the Bankruptcy Court on or before the date that is ten (10) days prior to the Confirmation Hearing.

**1.61**   "Priority Claims" shall mean all Claims, if any, entitled to priority under Section 507(a) of the Bankruptcy Code other than Priority Tax Claims and Administrative Expense Claims.

**1.62**   "Priority Tax Claims" shall mean any Claim of a governmental unit entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

**1.63**   "Professionals" shall mean those Persons (a) employed pursuant to an order of the Bankruptcy Court in accordance with Sections 327 or 1103 of the Bankruptcy Code and to be compensated for services pursuant to Sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement is allowed by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

**1.64**   "Professional Fee Claims" shall mean the fees and expenses of Professionals under Sections 330, 331, or 503 of the Bankruptcy Code approved by an Order of the Bankruptcy Court.

**1.65**   "Property" shall mean, collectively, the Debtor's Real Estate, improvements and Personalty.  All references to the "Property" shall be deemed to mean all or any portion of such Property.

**1.66**   "Pro Rata" shall mean, when used with reference to a distribution of property under the Plan, proportionately so that with respect to a particular Allowed Claim, the ratio of (i)(1) the amount of property distributed on account of such Claim to (2) the amount of such Claim, is the same as the ratio of (ii)(1) the amount of property distributed on account of all Allowed Claims of the Class in which such Claim is included to (2) the amount of all Allowed Claims in that Class.

**1.67**   "Real Estate" shall mean all real property owned by the Debtor.

**1.68**   "Reorganized Debtor" shall mean the Debtor, from and after the Effective Date, as recapitalized, reconstituted and reorganized pursuant to the Plan and any associated documents.

**1.69**   "Representative(s)" shall mean a Person's Affiliates, directors, stockholders, officers, members, managers, employees, controlling persons, agents, counsel and advisors of

any kind, and the directors, stockholders, officers, members, managers, employees, controlling persons, agents, counsel and advisors of any kind of all Affiliates of such Person.

**1.70** "Sanderling" shall mean the real property owned by the Debtor and located at 31 Butler's Creek Road, Edgartown, Massachusetts.

**1.71** "Santander" shall mean Santander Bank, NA and any successors and assigns.

**1.72** "Santander Cove House Claim" shall mean the Allowed Claim held by Santander that is secured by a Lien on Cove House.

**1.73** "Santander Farm Claim" shall mean the Allowed Claim held by Santander that is secured by a Lien on Farm.

**1.74** "Santander Sanderling Claim" shall mean the Allowed Claim held by Santander that is secured by a Lien on Sanderling.

**1.75** "Schedules" shall mean the schedules of assets and liabilities, the list of holders of interests and the statements of financial affairs filed by the Debtor under Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules, lists and statements have been or may be supplemented or amended from time to time.

**1.76** "Secured Claim" shall mean any Claim that is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, or, in the event that such Claim is a claim of setoff under Section 553 of the Bankruptcy Code, to the extent of such setoff.

**1.77** "Senior" shall mean (a) with respect to an Allowed Claim, any other Allowed Claim that is entitled to a priority of distribution under the Bankruptcy Code over the subject Allowed Claim, and (b) with respect to a Lien, any other Lien on the same Collateral that is entitled to precedence over the subject Lien with respect to such Collateral.

## ARTICLE II

## TREATMENT OF ALLOWED UNCLASSIFIED CLAIMS

**2.1   Non-Classification.**

As provided in Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims against the Debtor are not classified for the purposes of voting on, or receiving distributions under, the Plan. All such Claims are instead treated separately in accordance with the terms set forth in this Article II.

**2.2   Administrative Expense Claims.**

(a)   General. Except for Professional Fee Claims and except as otherwise agreed to by the Debtor or the Reorganized Debtor and the holder of an Allowed Administrative Expense Claim, each such holder shall be paid in full in Cash on the earlier of: (i) the date such Allowed

Administrative Expense Claim becomes due in accordance with its terms; and (ii) the Effective Date.  If the Debtor or the Reorganized Debtor disputes any portion of an Administrative Expense Claim, the Debtor or the Reorganized Debtor shall pay the Allowed amount of such Administrative Expense Claim within five (5) days after the entry of a Non-Appealable Order with respect to the allowance of such disputed Administrative Expense Claim.

(b)      U.S. Trustee's Fees.  The outstanding fees due to the United States Trustee pursuant to 11 U.S.C. § 1930 shall be paid in full on or before the Effective Date.

(c)      Professional Compensation and Expense Reimbursement Claims.

(i)      Within thirty (30) days after the Effective Date, each Professional shall file a final application for the allowance of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date.  Any such application granted by the Bankruptcy Court shall be paid: (1) within fifteen days of the entry of the order of the Bankruptcy Court approving such application, unless a stay of the order approving the application is obtained; or (2) upon such other terms as may be mutually agreed upon between the Professional and the Debtor or the Reorganized Debtor.

(ii)      All fees and expenses of Professionals for services rendered after the Effective Date shall be paid by the Reorganized Debtor upon receipt of reasonably detailed invoices in such amounts and on such terms as such Professional and the Reorganized Debtor may agree.  No further order or authorization from the Bankruptcy Court shall be necessary to permit the Reorganized Debtor to pay the fees and expenses of Professionals for services rendered after the Effective Date.

**2.3      Priority Tax Claims.**

At the sole election of the Debtor, each holder of an Allowed Priority Tax Claim against each the Debtor, if any, shall be paid either: (a) upon such terms as may be agreed to between the Debtor and the holder of an Allowed Priority Tax Claim, (b) in full in Cash on the later of the Effective Date or the date that such Allowed Priority Tax Claim would have been due if the Bankruptcy Cases had not been commenced, or (c) in installment payments of Cash commencing on the Effective Date and (i) of a total value as of the Effective Date equal to the Allowed amount of such Claim, (ii) over a period ending not later than five (5) years from the Petition Date, and (iii) in a manner not less favorable than the most favored General Unsecured Claim under the Plan (other than the manner provided to the holders of Convenience Class Claims).

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

The Claims against and Equity Interests in the Debtor are categorized below for all purposes under the Plan including voting, confirmation and distribution pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Equity Interest falls within the description of such other Classes.  A Claim is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released or otherwise settled prior to the Effective Date.

### 3.1    Claim and Equity Interest Categories

Claims against and Equity Interests in the Debtor have been classified as follows:

| Class | Designation | Impairment | Entitled to Vote |
|:---:|:---:|:---:|:---:|
| 1 | Anderson Secured Claim | Impaired | Yes |
| 2 | Beckers Secured Claim | Impaired | Yes |
| 3 | NEPCO Secured Claim | Unimpaired | No |
| 4 | Owen Secured Claim | Unimpaired | No |
| 5 | Santander Secured Claims | Unimpaired | No |
| 6 | Herring Creek Landowners Association Claims | Unimpaired | No |
| 7 | General Unsecured Claims | Impaired | Yes |
| 8 | Equity Interests | Unimpaired | No |

## ARTICLE IV

## TREATMENT OF CLAIMS AND EQUITY INTERESTS

**4.1**    **Class 1 – Anderson Secured Claims.**

(a)    Classification.  Class 1 consists of the Anderson Claim.

(b)    Impairment and Voting.  Class 1 is impaired under the Plan.  The holder of the Class 1 Claim shall be entitled to vote to accept or reject the Plan.

(c)    Claim Treatment.  In full and complete satisfaction, settlement, discharge and release of the Anderson Secured Claim, the holder of the Allowed Anderson Secured Claim shall receive, until paid in full, the following treatment:

   (i)    Cove House Sale Proceeds.  Upon the sale of Cove House, Anderson shall receive all of the Cove House Sale Proceeds after the payment in full of: (1) all Allowed Senior Secured Claims, and (2) the Carveout.

   (ii)    Farm Sale Proceeds.  Upon the sale of Farm, Anderson shall receive all of the Farm Sale Proceeds after the payment in full of all Allowed Senior Secured Claims.

   (iii)    Anderson Note.  As soon as practicable following the Effective Date, the Reorganized Debtor shall deliver to the holder of the Allowed Anderson Secured Claim: (1) the Anderson Note, (2) a second priority mortgage on Sanderling to secure the Anderson Note, (3) a first priority lien on the Flag Pole House to secure the Anderson Note, (4) pending its sale, a second priority Lien on Farm to secure the Anderson Note, (5) a second priority mortgage on the Hughes Residence to secure the Anderson Note, and (6) a Lien on CCG's personal property to secure the Anderson Note.

(d)    Liens.  The Liens held by the holder of the Allowed Anderson Secured Claim shall be treated as follows:

   (i)    Retention of Liens.  The holder of the Allowed Anderson Secured Claim shall retain all valid and perfected Liens to secure the payment of the Allowed Anderson Secured Claim; provided that such Liens shall be subordinated to the extent provided in the P&S or as is reasonably necessary to effectuate the sale of Cove House and/or Farm.

   (ii)    Discharge of Liens.  Upon the sale of Cove House, all Liens on Cove House securing the Allowed Anderson Secured Claim shall

12

be discharged.  Upon the sale of Farm, all Liens on Farm securing the Allowed Anderson Secured Claim shall be discharged.  Upon payment in full of the Allowed Anderson Secured Claim: (1) all remaining Liens securing the Allowed Anderson Secured Claim shall be deemed canceled, discharged and released, and (2) the holder of the Allowed Anderson Secured Claim shall deliver to the Reorganized Debtor, within five (5) Business Days of the payment in full of the Allowed Anderson Secured Claim, all UCC terminations, mortgage discharges and any other documents necessary to effect the discharge and release of such Liens.

**4.2**     **Class 2 – Beckers Secured Claim.**

(a)     <u>Classification</u>.  Class 2 consists of the Allowed Beckers Claim.

(b)     <u>Impairment and Voting</u>.  The Allowed Beckers Claim is impaired under the Plan.  The holder of the Allowed Beckers Claim shall be entitled to vote to accept or reject the Plan.

(c)     <u>Claim Treatment</u>.  In full and complete satisfaction, settlement, discharge and release of the Claims by Beckers against the Debtor, including all Secured Claims, the holder of the Allowed Beckers Claims shall receive, on the later to occur of the Effective Date or the date such Claim becomes allowed either: (i) the payment of up to $2,500,000.00 from the Carveout, or (ii) treatment as agreed between the Debtor and the holder of the Allowed Beckers Secured Claim.

(d)     <u>Liens</u>.  The Liens held by the holder of the Allowed Beckers Secured Claim shall be treated as follows:

(i)     <u>Retention of Liens</u>.  The holder of the Allowed Beckers Secured Claim shall retain all valid and perfected Liens to secure the payment of the Allowed Beckers Secured Claim; provided that such Liens shall be subordinated to the extent provided in the P&S or as is reasonably necessary to effectuate the sale of Cove House and/or Farm.

(ii)     <u>Discharge of Liens</u>.  Upon the sale of Cove House, all Liens on Cove House securing the Allowed Beckers Secured Claim shall be discharged.  Upon payment in full of the Allowed Beckers Secured Claim: (1) all remaining Liens securing the Allowed Beckers Secured Claim shall be deemed canceled, discharged and released, and (2) the holder of the Allowed Beckers Secured Claim shall deliver to the Reorganized Debtor, within five (5) Business Days of the payment in full of the Allowed Beckers Secured Claim, all UCC terminations, mortgage discharges and any other documents necessary to effect the discharge and release of such Liens.

**4.3     Class 3 – NEPCO Secured Claim.**

(a)     <u>Classification</u>.  Class 3 consists of the Allowed NEPCO Secured Claim.

(b)     <u>Impairment and Voting</u>.  The Allowed NEPCO Secured Claim is unimpaired under the Plan and is conclusively presumed to have accepted the Plan.

(c)     <u>Claim Treatment</u>.  In full and complete satisfaction, settlement, discharge and release of the Allowed NEPCO Secured Claim, upon the sale of Cove House, the holder of the Allowed NEPCO Secured Claim shall receive payment in full, in cash, of the Allowed NEPCO Secured Claim from the Carveout.

(d)     <u>Liens</u>.  The Liens held by the holder of the Allowed NEPCO Secured Claim shall be treated as follows:

    (i)     <u>Retention of Liens</u>.  The holder of the Allowed NEPCO Secured Claim shall retain all valid and perfected Liens to secure the payment of the Allowed NEPCO Secured Claim; provided that such Liens shall be subordinated to the extent provided in the P&S or as is reasonably necessary to effectuate the sale of Cove House and/or Farm.

    (ii)     <u>Discharge of Liens</u>.  Upon the sale of Cove House: (1) all Liens securing the Allowed NEPCO Secured Claim shall be deemed canceled, discharged and released, and (2) the holder of the Allowed NEPCO Secured Claim shall deliver to the Reorganized Debtor all UCC terminations, mortgage discharges and any other documents necessary to effect the discharge and release of such Liens.

**4.4     Class 4 – Owen Secured Claim.**

(a)     <u>Classification</u>.  Class 4 consists of the Allowed Owen Secured Claim. Any Deficiency Claim held by Owen shall be treated as a Class 7 Claim.

(b)     <u>Impairment and Voting</u>.  The Allowed Owen Secured Claim is unimpaired under the Plan and is conclusively presumed to have accepted the Plan.

(c)     <u>Claim Treatment</u>.  In full and complete satisfaction, settlement, discharge and release of the Allowed Owen Secured Claim, upon the sale of Cove House and after the payment in full of all Senior Secured Claims, the holder of the Allowed Owen Secured Claim shall receive all of the Cove House Sale Proceeds until paid in full.

(d)     <u>Liens</u>.  The Liens held by the holder of the Allowed Owen Secured Claim shall be treated as follows:

(i) <u>Retention of Liens</u>.  The holder of the Allowed Owen Secured Claim shall retain all valid and perfected Liens to secure the payment of the Allowed Owen Secured Claim; provided that such Liens shall be subordinated to the extent provided in the P&S or as is reasonably necessary to effectuate the sale of Cove House and/or Farm.

(ii) <u>Discharge of Liens</u>.  Upon the sale of Cove House: (1) all Liens securing the Allowed Owen Secured Claim shall be deemed canceled, discharged and released, and (2) the holder of the Allowed Owen Secured Claim shall deliver to the Reorganized Debtor all UCC terminations, mortgage discharges and any other documents necessary to effect the discharge and release of such Liens.

**4.5     Class 5 – Santander Secured Claims.**

(a) <u>Classification</u>.  Class 5 consists of the Allowed Santander Secured Claims. Any Deficiency Claim held by Santander shall be treated as a Class 7 Claim.

(b) <u>Impairment and Voting</u>.  The Allowed Santander Secured Claims are unimpaired under the Plan and are conclusively presumed to have accepted the Plan.

(c) <u>Claim Treatment</u>.  In full and complete satisfaction, settlement, discharge and release of the Santander Secured Claims, the holder of the Allowed Santander Secured Claims shall receive the following treatment:

(i) <u>Santander Cove House Claim</u>.  In full and complete satisfaction, settlement, discharge and release of the Santander Cove House Claim, upon the sale of Cove House and after the payment in full of all Senior Secured Claims against Cove House, the holder of the Santander Cove House Claim shall receive all of the Cove House Sale Proceeds until the Santander Cove House Claim is paid in full.

(ii) <u>Santander Farm Claim</u>.  In full and complete satisfaction, settlement, discharge and release of the Santander Farm Claim, upon the sale of Farm and after the payment in full of all Senior Secured Claims against Farm, the holder of the Santander Farm Claim shall receive all of the Farm Sale Proceeds until the Santander Farm Claim is paid in full.

(iii) <u>Santander Sanderling Claim</u>.  In full and complete satisfaction, settlement, discharge and release of the Santander Sanderling Claim, as soon as practicable following the Effective Date, the

holder of the Santander Sanderling Claim shall receive, at the election of the Reorganized Debtor, one of the following: (1) Cash in the amount of the Santander Sanderling Claim; (2) the treatment specified in Section 1124(2)(A) through (E) of the Bankruptcy Code; or (3) treatment as agreed between the Debtor and the holder of the Santander Sanderling Claim.

(d)    <u>Liens</u>.  The Liens held by the holder of the Allowed Santander Secured Claims shall be treated as follows:

(i)    <u>Retention of Liens</u>.  The holder of the Allowed Santander Secured Claims shall retain all valid and perfected Liens to secure the payment of the Allowed Santander Secured Claims; provided that such Liens shall be subordinated to the extent provided in the P&S or as is reasonably necessary to effectuate the sale of Cove House and/or Farm.

(ii)    <u>Discharge of Liens</u>.  Upon the sale of Cove House, all Liens securing the Santander Cove House Claim shall be deemed canceled, discharged and released.  Upon the sale of Farm, all Liens securing the Santander Farm Claim shall be deemed canceled, discharged and released.  Upon the payment in full of the Santander Sanderling Claim, all Liens securing the Santander Sanderling Claim shall be deemed canceled, discharged and released.  The holder of the Allowed Santander Secured Claims shall deliver to the Reorganized Debtor all UCC terminations, mortgage discharges and any other documents necessary to effect the discharge and release of such Liens.

**4.6    Class 6 – Herring Creek Landowners Association Claims.**

(a)    <u>Classification</u>.  Class 6 consists of any Allowed Secured Claim held by the Herring Creek Landowners Association.  Any Deficiency Claim held by the Herring Creek Landowners Association shall be treated as a Class 7 Claim.

(b)    <u>Impairment and Voting</u>.  The Allowed Herring Creek Landowners Association Secured Claim is unimpaired under the Plan and is conclusively presumed to have accepted the Plan.

(c)    <u>Claim Treatment</u>.  In full and complete satisfaction, settlement, discharge and release of the Allowed Herring Creek Landowners Association Secured Claim, upon the sale of Cove House and after the payment in full of all Senior Secured Claims, the holder of the Allowed Herring Creek Landowners Association Secured Claim shall receive all of the Cove House Sale Proceeds until paid in full.

16

(d)    <u>Liens</u>.  The Liens held by the holder of the Allowed Herring Creek Landowners Association Secured Claim shall be treated as follows:

(i)    <u>Retention of Liens</u>.  The holder of the Allowed Herring Creek Landowners Association Secured Claim shall retain all valid and perfected Liens to secure the payment of the Allowed Herring Creek Landowners Association Secured Claim; provided that such Liens shall be subordinated to the extent provided in the P&S or as is reasonably necessary to effectuate the sale of Cove House and/or Farm.

(ii)    <u>Discharge of Liens</u>.  Upon the sale of Cove House: (1) all Liens securing the Allowed Herring Creek Landowners Association Secured Claim shall be deemed canceled, discharged and released, and (2) the holder of the Allowed Herring Creek Landowners Association Secured Claim shall deliver to the Reorganized Debtor all UCC terminations, mortgage discharges and any other documents necessary to effect the discharge and release of such Liens.

**4.7    Class 7 – General Unsecured Claims.**

(a)    <u>Classification</u>.  Class 7 consists of the Allowed General Unsecured Claims.

(b)    <u>Impairment and Voting</u>.  Class 7 is impaired under the Plan.  Each holder of a General Unsecured Claim shall be entitled to vote to accept or reject the Plan.

(c)    <u>Claim Treatment</u>.  Except as provided in Section 4.7(d) and in full and complete satisfaction, settlement, release and discharge, each holder of an Allowed General Unsecured Claim shall receive, at the election of the Reorganized Debtor, one of the following: (1) payment in full from the Carveout, in Cash on the Effective Date, of the holder's Allowed General Unsecured Claim; (2) a Pro Rata share of bi-annual payments from the Plan Fund until paid in full; or (3) treatment as agreed between the Debtor and the holder of the Allowed General Unsecured Claim.

(d)    <u>Insider Claims</u>.  No Insiders of the Debtors shall receive any distributions on account of their Allowed Claims until the Allowed Claims of all non-Insider creditors have been paid in full or received the agreed to treatment under the terms of the Plan.

**4.8    Class 8 – Equity Interests.**

    (a)    <u>Classification</u>.  Class 8 consists of the Allowed Equity Interests in the Debtor.

    (b)    <u>Impairment and Voting</u>.  Class 8 is unimpaired under the Plan and is conclusively presumed to have accepted the Plan.

    (c)    <u>Treatment</u>.  In exchange for the Plan Contribution, the holders of the Equity Interests shall retain their respective Equity Interests.

**4.9    Reservation of Rights.**

The Debtor reserves the right to, among other things, (a) contest the right of the holder of any Claim to vote on the Plan, or designate the vote of the holder of any Claim (b) contest the right of the holder of any Claim to receive distributions under the Plan, and (c) seek to subordinate any Claim for inequitable conduct or otherwise.

**ARTICLE V**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

**5.1    Plan Implementation.**

The Plan will be funded from the Debtor's Property, any income derived from the Property, and the sale of the Property.  Confirmation of the Plan shall constitute authorization for the Debtor or the Reorganized Debtor to use all of its Property for all purposes provided for in the Plan including, but not limited to the payment of all Allowed Claims.

**5.2    Sale of Cove House and Farm Pursuant to P&S.**

    (a)    Confirmation of the Plan shall constitute authorization for the Debtor or the Reorganized Debtor to sell Cove House and Farm pursuant to the P&S and to effectuate all of the terms of the P&S.  The sale of Cove House and Farm shall be free and clear of all Liens, Claims and interests pursuant to Section 363(f) of the Bankruptcy Code, including without limitation all Claims held by Anderson, Beckers, NEPCO, Owen and Santander.  The sale of Cove House and Farm pursuant to the P&S shall be entitled to the protection of Section 12.2 of the Plan.  The Debtor or the Reorganized Debtor shall distribute the proceeds of the sale of Cove House and Farm in accordance with the Plan.

    (b)    Within five (5) Business Days of the Effective Date, any creditor holding a Secured Claim is directed to execute and deliver to the closing attorney for the Cove House sale, such documents as are reasonably necessary to effectuate the sale of Cove House and Farm pursuant to the P&S including, without limitation, discharges of any mortgages or other Liens securing such Claim, and the following documents (each as defined in the P&S): (i) the Sanderling Easement Subordination, (ii) the Driveway Easement Subordination, (iii) the Farming

and Grazing Easement Subordination, and (iv) a subordination with respect to the Blue Heron Easement.

### 5.3    Other Sales of Property.

Confirmation of the Plan shall constitute authorization for the Debtor or the Reorganized Debtor, in each's sole discretion, to sell all or any portion of its Property to fund the Plan including, without limitation, Cove House and Farm in the event that the sale pursuant to the P&S does not close; provided that the Debtor shall obtain Bankruptcy Court approval of: (a) any sale of Cove House and/or Farm other than pursuant to the P&S; and (b) any pre-Effective Date sale of Sanderling and/or the Flag Pole House.  All sales, transfers or other dispositions of Property under or in conjunction with the Plan shall be free and clear of all Liens, Claims and interests pursuant to Section 363(f) of the Bankruptcy Code and shall be entitled to the protection of Section 12.2 of the Plan.  The Reorganized Debtor need not obtain Bankruptcy Court approval of any post-Effective Date sale, transfer or other disposition of Property.  The Debtor or the Reorganized Debtor is authorized to retain such professionals, including without limitation real estate brokers, as is necessary to sell all or any portion of its Property.

### 5.4    Execution of Necessary Documents.

(a)      Confirmation of the Plan shall constitute authorization for the Debtor or the Reorganized Debtor to enter into all documents, instruments and agreements necessary to effectuate the terms of the Plan including, without limitation, the documents, instruments and agreements necessary to effectuate the P&S.  The form and/or content of the documents, instruments and agreements necessary to effectuate the terms of the Plan shall be subject to the approval of the Debtor or the Reorganized Debtor, in each's sole discretion.

(b)      All matters provided for in the Plan involving any corporate action required by the Debtor or the Reorganized Debtor shall be deemed to have occurred, and shall be in effect, without any requirement of further action by the Debtor, the Reorganized Debtor, their agents, representatives, members, managers, officers, directors or Affiliates.

### 5.5    Organization Documents and Good Standing.

As of the Effective Date, the Debtor's Organization Documents shall be amended as necessary to effectuate the terms of the Plan and shall become the Organization Documents of the Reorganized Debtor.  To the extent that there is any inconsistency between the Plan and any of the Organization Documents, the terms of the Plan shall control.  To the extent any of the Debtor is not in compliance as of the Effective Date with any state or local law requirements necessary to remain as an organized legal entity in good standing and/or remain authorized as an organized legal entity to conduct business in any jurisdiction, the Debtor or the Reorganized Debtor, as the case may be, shall be deemed to be in compliance with any such laws if they comply with such laws within six months after the Effective Date.

**5.6     Revesting of Property.**

Except as otherwise provided in the Plan, the Reorganized Debtor shall be vested with all of the Debtor's Assets as of the Effective Date.

**5.7     Section 1123(a)(6) Modification.**

To the extent applicable to the Debtor, the Debtor's Organizational Documents shall be deemed modified to the extent necessary to comply with Section 1123(a)(6) of the Bankruptcy Code.

**5.8     Preservation of Causes of Action.**

Except as provided in, and unless expressly waived, relinquished, exculpated, released, compromised or settled in the Plan, the Confirmation Order, any Non-Appealable Order, or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, the Reorganized Debtor shall exclusively retain and may enforce, and the Debtor expressly reserves and preserves for these purposes in accordance with sections 1123(a)(5)(A) of the Bankruptcy Code, any Claims, demands, rights and Causes of Action that the Debtor or its Estate may hold against any person or entity.  No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to them by virtue of or in connection with the confirmation, consummation of effectiveness of the Plan.

**5.9     Default.**

No event of default under the Plan shall occur unless, in the event of a breach of the Debtor's obligations under the Plan, the holder of the Allowed Claim asserting the default shall provide written notice of such breach to the Reorganized Debtor and such breach is not cured: (i) in the event of a breach that can be cured by the payment of a sum of money, within twenty (20) days of the Reorganized Debtor's receipt of such notice; and (ii) for any other breach, within thirty (30) days of the Reorganized Debtor's receipt of such notice, provided that, if such non-monetary breach cannot reasonably be cured within such 30-day period and the Reorganized Debtor have commenced curing such breach and continue to cure such breach, the thirty (30) day period shall be extended for such time as is reasonably necessary to cure such breach.

## ARTICLE VI

## DISTRIBUTIONS ON CLAIMS AND RESOLUTION OF DISPUTED CLAIMS

**6.1     Method of Distributions Under the Plan.**

(a)     _In General_.  Subject to Bankruptcy Rule 9010, and except as otherwise provided in the Plan, all distributions under the Plan to be made by, or on behalf of, the Reorganized Debtor to the holder of each Allowed Claim shall be mailed by first class mail, postage prepaid, to the address of such holder as listed on the Schedules unless the Reorganized Debtor has been notified in writing of a change of address as of the Distribution Record Date, including, without

limitation, by the filing of a proof of claim or notice of transfer of claim filed by such holder that provides an address for such holder different from the address reflected on the Schedules. The Reorganized Debtor shall have no obligation to locate such holders whose distributions or notices are properly mailed but nevertheless returned.

(b)      Form of Distributions. Except as otherwise provided in the Plan, any payment of Cash made by, or on behalf of, the Reorganized Debtor pursuant to the Plan shall be made by check or wire transfer.

(c)      Distributions to be on Business Days. Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

(d)      Fractional Dollars. Whenever any payment of a fraction of a dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (rounding down in the case of $0.50 or less, and rounding up in the case of more than $0.50).

(e)      Distributions to Holders as of the Distribution Record Date. As of the close of business on the Distribution Record Date, the claims register shall be closed. The Reorganized Debtor shall have no obligation to recognize any transfer of any Claims occurring after the close of business on the Distribution Record Date, and shall instead be entitled to recognize and deal for all purposes under the Plan with only those holders of record as of the close of business on the Distribution Record Date.

**6.2    Objections to Disputed Claims.**

Prior to the Effective Date, any objections to Claims against the Debtor shall be prosecuted by the Debtor. On and after the Effective Date, any objections to Claims against the Debtor shall be prosecuted by the Reorganized Debtor.

**6.3    Deadline for Objecting to Disputed Claims.**

Except as otherwise provided by order of the Bankruptcy Court, the Debtor, or the Reorganized Debtor as the case may be, may file an objection to a Claim against the Debtor until the later of: (a) the date that such Claim becomes due and payable in accordance with its terms, or (b) sixty (60) days after the Effective Date.

**6.4    Estimation of Claims.**

The Debtor or the Reorganized Debtor may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Debtor or the Reorganized Debtor have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall have jurisdiction to estimate a Disputed Claim at any time, including, without limitation, during litigation concerning such Claim or an objection to such Claim. In the event the Bankruptcy Court estimates any Disputed Claim, the estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the

Bankruptcy Court.  If the Bankruptcy Court determines the maximum limitation of a Disputed Claim, such determination shall not preclude the Debtor from pursuing any supplemental proceedings to object to any payment of such Claim.  All of the aforementioned Claims objections, estimation and resolution procedures are cumulative and not exclusive remedies. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

**6.5    Disputed Claims Reserve.**

(a)    <u>Establishment</u>.  The Reorganized Debtor shall maintain a reserve (the "Disputed Claims Reserve") equal to 100% of the distributions to which holders of Disputed Claims would be entitled under the Plan if such Disputed Claims were Allowed Claims or such lesser amount as required by a Non-Appealable Order.

(b)    <u>Investment of Cash</u>.  Cash in the Disputed Claims Reserve may be invested by the Reorganized Debtor only in Cash Equivalents having maturities sufficient to enable the Reorganized Debtor to make all necessary payments to holders of Disputed Claims if, and when, such Disputed Claims become Allowed Claims.  Any interest, income, distributions or accretions on account of such investment in Cash Equivalents shall be for the sole benefit and account of the Reorganized Debtor, and the Reorganized Debtor shall be solely responsible for the payment of any income or other taxes arising therefrom.

(c)    <u>Distributions Upon Allowance of Disputed Claims</u>.  The holder of a Disputed Claim that becomes an Allowed Claim after the Effective Date shall receive distributions of Cash from the Disputed Claims Reserve as soon as practicable following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Non-Appealable Order.  Such distributions shall be made in accordance with the Plan based upon the distributions that would have been made to the holder of such a Claim under the Plan if the Disputed Claim had been an Allowed Claim on or prior to the Effective Date.  No holder of a Disputed Claim shall have any claim against the Disputed Claims Reserve or a Reorganized Debtor with respect to such Claim until the Disputed Claim shall become an Allowed Claim.

**6.6    Provision of Tax And Other Transfer Documents.**

In order to be eligible to receive a distribution under the Plan, all holders of Claims shall provide to the Debtor or the Reorganized Debtor an Internal Revenue Service form W-9 and such other documents as are necessary to effectuate distributions under the Plan.  In the event that the holder of a Claim fails to provide any such form within thirty (30) days after the second written request sent to the holder of the Claim's address as provided in Section 6.1(a) of the Plan, the holder of such Claim shall be deemed to have waived its Claim and any right to a distribution under the Plan.  Any such waived distribution shall revert to the Reorganized Debtor free and clear of any claim or interest of any holder of a Claim under the Plan.

**6.7    Reversion of Unclaimed Checks and Disputed Claims Reserve.**

The following amounts shall revert and be vested in the Reorganized Debtor free and clear of any claim or interest of any holder of a Claim under the Plan: (a) the amount of any checks issued for distributions under the Plan that remain uncashed for a period of 180 days after

the date of such distribution; and (b) to the extent that a Disputed Claim is not Allowed or becomes an Allowed Claim in an amount less than the Disputed Claim Amount, the excess of the amount of Cash or Cash Equivalents in the Disputed Claims Reserve attributable to such Disputed Claim over the amount of Cash actually distributed on account of such Disputed Claim.

## ARTICLE VII

## VOTING ON THE PLAN AND CRAMDOWN

### 7.1    Voting of Claims.

Each holder of an Allowed Claim in an impaired Class that retains or receives property under the Plan shall be entitled to vote separately to accept or reject the Plan.  Each holder of the foregoing Allowed Claims electing to vote shall do so on a duly executed and delivered ballot and in accordance with procedures set forth in the applicable order of the Bankruptcy Court establishing Plan voting procedures.

### 7.2    Acceptance by Impaired Classes.

An impaired class of Claims or Equity Interests shall have accepted the Plan if (a) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims or Allowed Equity Interests actually voting in such Class have voted to accept the Plan, and (b) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims or Allowed Equity Interests actually voting in such Class have voted to accept the Plan.

### 7.3    Nonconsensual Confirmation.

If any impaired Class entitled to vote does not accept the Plan by the requisite majorities provided in Sections 1126(c) or 1126(d) of the Bankruptcy Code, as applicable, or if any impaired class is deemed to have rejected the Plan, the Debtor reserves the right (a) to seek confirmation of the Plan under Section 1129(b) of the Bankruptcy Code, and/or (b) to amend the Plan in accordance with Section 12.3 of the Plan.

## ARTICLE VIII

## EXECUTORY CONTRACTS, UNEXPIRED LEASES, POST-PETITION CONTRACTS AND RETIREE AND COMPENSATION BENEFITS

### 8.1    Assumption of Executory Contracts and Unexpired Leases.

Pursuant to Sections 1123(b)(2) and 365(a) of the Bankruptcy Code, any executory contract or unexpired lease (excluding insurance policies) that (a) has not expired by its own terms on or prior to the Confirmation Date, (b) has not been assumed, assumed and assigned or rejected with the approval of the Bankruptcy Court on or prior to the Confirmation Date, (c) is not the subject of a motion to assume or reject which is pending at the time of the Confirmation Date, or (d) is not designated by the Debtor as being an executory contract or unexpired lease to

be rejected at the time of confirmation of the Plan, shall be deemed assumed on the Effective Date. The entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumption pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code.

**8.2    Payments Related to The Assumption of Executory Contracts And Unexpired Leases.**

(a)    _Payment of Claims Arising From Assumed Contracts And Leases_. Any Allowed Claims arising from the assumption of an executory contract or unexpired lease will receive, in full and complete satisfaction, settlement, release and discharge of such Claims, payment in the ordinary course of business as and when such Allowed Claims become due pursuant to such executory contract or unexpired lease.

(b)    _Disputed Claims and Bar Date_. If there is a dispute regarding (i) the amount of any claim arising from the assumption or rejection of an executory contract or unexpired lease, (ii) the ability of the Debtor or any assignee to provide "adequate assurance of further performance," within the meaning of Section 365 of the Bankruptcy Code, under a contract or lease to be assumed, or (iii) any other matter pertaining to the assumption or assumption and assignment of any contract or lease, the payment of any Claim related to the foregoing will be made following entry of a Non-Appealable Order resolving the dispute and approving the assumption.

**8.3    Rejection Damage Claims.**

If the rejection of an executory contract or unexpired lease by the Debtor results in a Claim by the other party or parties to such contract or lease, any claim for damages, if not previously evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Estate, the Reorganized Debtor and their respective properties, agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Debtor on or before thirty (30) days following the later to occur of: (a) the rejection of such executory contract or unexpired lease, and (b) the Confirmation Date. Unless otherwise ordered by the Bankruptcy Court or provided in the Plan, all such Claims for which proofs of claim are timely filed will be treated as General Unsecured Claims subject to the provisions of the Plan. The Debtor or the Reorganized Debtor, as the case may be, shall have the right to object to any such Claim for rejection damages in accordance with the Plan.

## ARTICLE IX

## RELEASE AND DISCHARGE OF CLAIMS

**9.1    Discharge.**

Except as otherwise expressly provided in Section 1141 of the Bankruptcy Code or the Plan, the distributions made pursuant to the Plan are in full and final satisfaction, settlement, release and discharge as against the Debtor and the Reorganized Debtor of any debt or obligation of the Debtor that arose before the Effective Date, and any debt of the Debtor of a kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code, and all Claims against the Debtor or

its Estate of any nature, including, without limitation, any interest accrued thereon from and after the Petition Date, whether or not (a) a proof of claim based on such debt, obligation or Equity Interest is filed or deemed filed under Section 501 of the Bankruptcy Code, (b) such Claim is Allowed under Section 502 of the Bankruptcy Code, or (c) the holder of such Claim has accepted the Plan.

### 9.2    Injunction Relating to the Plan.

As of the Effective Date, all Persons are hereby permanently enjoined from commencing, continuing or enforcing in any manner or in any place, any action or other proceeding, whether directly, indirectly, derivatively or otherwise against the Debtor, the Estate or the Reorganized Debtor, on account of, or respecting any Claims, debts, rights, obligations, Causes of Action or liabilities discharged pursuant to the Plan, except to the extent expressly permitted under the Plan.

### 9.3    Releases.

Except as otherwise set forth in the Plan, as of the Effective Date, in consideration for, among other things, the obligations of the Debtor under the Plan and other contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan, (a) each holder of a Claim or Interest that votes in favor of the Plan and (b) to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, each Person that has held, holds or may hold a Claim or Equity Interest or at any time was a creditor or equity holder of the Debtor and that does not vote on the Plan or votes against the Plan, in each case will be deemed to forever release, waive and discharge all claims (including any derivative claims), obligations, suits, judgments, damages, demands, rights, causes of action and liabilities (other than the right to enforce the Reorganized Debtor's obligations under the Plan and the contracts, instruments, releases, agreements and documents delivered under the Plan), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising in law, equity or otherwise, that are based in whole or in part on any act, omission, transaction or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Bankruptcy Case or the Plan that such entity has, had or may have against the Debtor, the Estate, the Estate's Assets, the Reorganized Debtor and/or the Reorganized Debtor's Assets.

### 9.4    Cancellation of Existing Indebtedness and Liens.

Except as may otherwise be provided in the Plan, on the Effective Date: (a) all credit agreements, promissory notes, mortgages, security agreements, invoices, contracts, agreements and any other documents or instruments evidencing Claims against the Debtor, together with any and all Liens securing same, shall be canceled, discharged and released without further act or action by any Person under any applicable agreement, law, regulation, order or rule, (b) the obligations of the Debtor thereunder shall be deemed cancelled, discharged and released, and (c) all of the right, title and interest of any holder of such mortgages, deeds of trust, liens or other security interests, including any rights to any collateral thereunder, will revert to the Reorganized Debtor.  To the extent deemed necessary or advisable by the Reorganized Debtor, any holder of a

Claim shall promptly provide the Reorganized Debtor with an appropriate instrument of cancellation, discharge or release, as the case may be, in suitable form for recording wherever necessary to evidence such cancellation, discharge or release, including the cancellation, discharge or release of any Lien securing such Claim.

### 9.5    Exculpation.

Except as otherwise set forth in the Plan, neither the Debtor, the Reorganized Debtor, nor any of their respective present or former members, managers, officers, directors, employees, general or limited partners, advisors, attorneys, agents, successors or assigns, shall have or incur any liability to any holder of a Claim or an Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the administration of the Bankruptcy Case, the pursuit of confirmation of the Plan, the Disclosure Statement, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan occurring prior to the Effective Date, provided that the terms of this Section 9.5 shall not apply to any liability for willful misconduct or ultra vires acts.

### 9.6    Setoff.

Except as otherwise provided in the Plan, nothing contained in the Plan shall constitute a waiver or release by the Debtor, the Estate or the Reorganized Debtor of any rights of setoff they may have against any Person.

### ARTICLE X

### CONDITIONS PRECEDENT TO THE EFFECTIVE DATE OF THE PLAN

### 10.1   Conditions Precedent to Effectiveness.

Subject to Section 10.2 of the Plan, the following are conditions precedent to the occurrence of the Effective Date: (a) the Confirmation Order, in form and substance reasonably acceptable to the Debtor shall have been entered by the Bankruptcy Court and shall not be subject to any stay, (b) the sale of Cove House shall have occurred, and (c) all actions, other documents and agreements necessary to implement the Plan shall have been executed, delivered and, if necessary, properly recorded, and shall have become effective.

### 10.2   Waiver of Conditions.

Except for the condition set forth in Sections 10.1(a) and (b) of the Plan, the Debtor may, in its sole discretion, waive one or more of the conditions precedent to the effectiveness of the Plan set forth in Section 10.1, without notice to any creditors or parties in interest and without Bankruptcy Court approval.  The failure to satisfy or waive any condition precedent to the occurrence of the Effective Date may be asserted by the Debtor regardless of the circumstances giving rise to the failure of such condition to be satisfied.

### 10.3    Effect of Non-occurrence of Conditions to the Effective Date.

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or Disclosure Statement shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor, or (b) prejudice in any manner the rights of the Debtor, or constitute an admission, acknowledgement, offer or undertaking by the Debtor.

## ARTICLE XI

## RETENTION OF JURISDICTION

From and after the occurrence of the Effective Date, the Bankruptcy Court shall have jurisdiction over the matters arising out of, and related to, the Bankruptcy Cases and the Plan, as legally permissible, pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code including, without limitation:

(a)    To hear and determine any and all objections to the allowance, disallowance, determination, liquidation, classification or estimation of any Claims or Equity Interests or any controversies as to the priority and classification of any Claims (or any security with respect thereto) or Equity Interests or to estimate any Disputed Claim;

(b)    To hear and determine any and all applications by Professionals for compensation and reimbursement of expenses, authorized pursuant to the Plan or the Bankruptcy Code;

(c)    To hear and determine any and all applications (whether or not pending at or on the Confirmation Date) related to the rejection, assumption or assumption and assignment of executory contracts and unexpired leases to which the Debtor is a party, and to hear, determine and allow any Claims resulting therefrom;

(d)    To enforce and adjudicate the provisions of the Plan subject to the terms of the Plan;

(e)    To correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purpose and the intent of the Plan;

(f)    To determine any Claim or liability to a governmental unit which may be asserted as a result of the transactions contemplated in the Plan;

(g)    To hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

(h)    To determine such other matters as may be necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(i)     To resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, enforcement or vacatur of the Plan or any Person's obligations incurred in connection with the Plan;

(j)     To issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation or enforcement of the Plan, except as otherwise provided herein;

(k)     To determine any other matters that may arise in connection with the Plan, the Disclosure Statement, the Confirmation Order or any other contract, instrument, release, indenture or other agreement or document created in connection with the foregoing;

(l)     To resolve any cases, controversies, suits or disputes with respect to releases, injunctions and other provisions contained in the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions or other provisions;

(m)     To hear and determine any Claims, rights, demands and Causes of Action arising prior to the Effective Date preserved pursuant to the Plan; and

(n)     To enter an order and/or final decree concluding the Bankruptcy Cases.

## ARTICLE XII

## MISCELLANEOUS

### 12.1   Continuation of Injunctions or Stays Until Effective Date.

All injunctions or stays provided for in the Bankruptcy Cases under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

### 12.2   Exemption from Transfer Taxes.

In accordance with Section 1146(c) of the Bankruptcy Code: (a) the issuance, transfer or exchange of any security under the Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan, including any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan, or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated by the Plan, (b) the making, delivery, creation, assignment, amendment or recording of any note or other obligation for the payment of money or any mortgage, deed of trust or other security interest under, in furtherance of, or in connection with the Plan, and the issuance, renewal, modification or securing of indebtedness by such means, and (c) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, with respect to the sale of Cove House and/or Farm, shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax or other similar

tax or governmental assessment.  Each recorder of deeds or similar official for any county, city or governmental unit in which any instrument under the Plan is to be recorded shall accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, transfer tax, intangible tax or similar tax.

### 12.3    Amendment or Modification of the Plan.

Alterations, amendments or modifications of the Plan may be proposed in writing by the Debtor at any time prior to the Confirmation Date, provided that the Plan, as altered, amended or modified, satisfies the conditions of Sections 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with Section 1125 of the Bankruptcy Code.  The Plan may be altered, amended or modified at any time before or after the Confirmation Date and before substantial consummation, provided that the Plan, as altered, amended or modified, satisfies the requirements of Sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court confirms the Plan, as altered, amended or modified, under Section 1129 of the Bankruptcy Code. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.  The Debtor or the Reorganized Debtor may, without notice to holders of Claims insofar as it does not materially and adversely affect the interests of any such holders, correct any defect or omission in the Plan and any exhibit to the Plan or in any Plan Document.

### 12.4    Severability.

If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court may, upon the request of the Debtor, alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alternation or interpretation.  The Confirmation Order shall constitute a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable according to its terms.

### 12.5    Revocation or Withdrawal of the Plan.

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Debtor revokes or withdraws the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void.

### 12.6    Binding Effect.

The rights, duties and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

**12.7    Notices.**

All notices, requests and demands to or upon the Debtor or the Reorganized Debtor shall only be effective if in writing and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered when received and confirmed, addressed as follows:

Herring Creek Acquisition Company, LLC
c/o Robert Hughes
120 East De la Guerre Street
Santa Barbara, CA 93101

With a copy to:

MURPHY & KING, Professional Corporation
One Beacon Street
Boston, MA  02108
Attn:  D. Ethan Jeffery, Esq.
Tel:  617- 423-0400
Fax: 617-423-0498

**12.8    Governing Law.**

Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Massachusetts, without giving effect to the principles of conflicts of law of such jurisdiction.

**12.9    Withholding and Reporting Requirements.**

In connection with the consummation of the Plan, the Reorganized Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

**12.10    Post-Confirmation Fees, Final Decree.**

The Reorganized Debtor will be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6).  After confirmation, the Reorganized Debtor will serve the United States Trustee with a quarterly financial report for each quarter (or portion thereof) the case remain open.  The quarterly financial report shall include the following:

(a)    A statement of all disbursements made during the course of the quarter, whether or not pursuant to the plan;

(b)    A summary, by class, of amounts distributed or property transferred to each recipient under the plan, and an explanation of the failure to make any distributions or transfers of property under the plan;

(c)    The Reorganized Debtor's projections as to its continuing ability to comply with the terms of the plan;

(d)    A description of any other factors which may materially affect the Reorganized Debtor's ability to consummate the plan; and

(e)    An estimated date when an application for final decree will be filed with the court (in the case of the final monthly report, the date the decree was filed).

**12.11  Headings.**

Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

**12.12  Inconsistency.**

In the event of any inconsistency between the Plan and the Disclosure Statement or any other instrument or document created or executed pursuant to the Plan, the terms of the Plan shall govern.

HERRING CREEK ACQUISITION COMPANY, LLC

By: _/s/ Robert Hughes_____
Robert Hughes, Manager

Dated:  January 16, 2014

_/s/ D. Ethan Jeffery_____
MURPHY & KING, P.C.
One Beacon Street
Boston, MA  02108
Attn:   Harold B. Murphy, Esq. (BBO #362610)
      D. Ethan Jeffery, Esq. (BBO #559609)
Telephone: (617) 423-0400
Facsimile:  (617) 556-8985

682549