**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE: ) | |
| ) | |
| **HERRING CREEK ACQUISITION CO., LLC** ) | **Case No.: 14-15309** |
| ) | **Chapter 11** |
| **Debtor** ) | |

**LIMITED OPPOSITION TO CONFIRMATION**
**OF DEBTOR'S PROPOSED PLAN OF REORGANIZATION**

New England Phoenix Co., Inc. ("NEPCO") hereby files this limited opposition to confirmation of the above-referenced Debtor's proposed plan of reorganization (the "Plan") [Dkt # 26]. Generally, NEPCO does not oppose the Debtor's proposed plan to sell certain real property and related assets and, by doing so make 100% distribution to creditors other than those certain creditors who have agreed to other treatment of their claims. However, as set forth below, there remain too many open questions in the Plan and the uncertainty of the proposed bifurcated sale of certain of the Debtor's real property assets undermine the feasibility and efficacy of the proposed plan of reorganization. By way of further opposition, NEPCO respectfully states as follows:

**BACKGROUND**

1. NEPCO is a secured creditor of the Debtor's estate pursuant to the purchase and assignment of certain obligations of the Debtor related to a Promissory Note dated April 1, 2010 from the Debtor, as borrower, to James G. Gerblick, Trustee of the James G. Gerblick Trust (the "Original Lender") in the original principal amount of $2,550,000.00 (the "Note"). The Debtor's obligations under the Note and otherwise are guaranteed (the "Guaranties") by the Debtor's principal, Robert Hughes.

2. As collateral for the Note, the Debtor mortgaged three properties on Martha's Vineyard as collateral (the "Real Estate Collateral"). The Debtor defaulted on the Note. Original Lender and the Debtor then entered into a Forbearance Agreement, allowing the Debtor to attempt to rehabilitate itself. The Debtor's efforts failed, so that Original Lender and Borrower ultimately entered into an Agreement for Judgment in the amount of $3,014,252.00 that the Suffolk County Superior Court entered on October 30, 2013 (the "Judgment") in the matter of *James G. Gerblick, as he is Trustee of The James G. Gerblick Trust v. Herring Creek Acquisition Co., LLC*, C.A. No. 2012-02086-H (the "Note Action").

3. NEPCO, a Massachusetts corporation, purchased the Note, Guaranties, Judgment and the related loan and other loan documents from Original Lender on September 17, 2014. That purchase is memorialized, *inter alia*, by a Bill of Sale and Assignment of Loan Documents, whereby Original Lender assigned the Guaranties and Judgment to NEPCO. The Judgment was also assigned to NEPCO through an Assignment of Judgment and Attachment from Original Lender dated September 17, 2014. After NEPCO's acquisition of the Judgment, the Suffolk County Superior Court granted NEPCO's motion to substitute itself for Original Lender in the Note Action.

4. On January 16, 2015, in connection with the Debtor's Motion seeking approval of the Disclosure Statement, the Debtor submitted its proposed Plan. The Plan is predicated on closing of the sale of certain of the Real Property Collateral pursuant to a Purchase and Sale Agreement (the "P&S") submitted as an exhibit to the Plan.

5. Specifically, the P&S contemplates the sale of two pieces of the Real Property Collateral, namely the so-called "Farm Property" and the "Cove House", each of which serve as

collateral for the Debtor's obligations to NEPCO. The buyer identified in the P&S is Dream Enterprises, LLC (the "Putative Buyer").

6. Briefly, the P&S contemplates a two-step sale process by which first the Cove House is to be sold at some undetermined time up to as long as six months after the Effective Date of the Plan (as defined in the Plan) and thereafter the Farm Property would be sold, again at some undetermined time up to eighteen months after the Effective Date.

7. The Debtor further proposes that the sale under the P&S will result in payment in full for all secured creditors, including NEPCO, other than those that agree to different treatment.[1]

8. The P&S, which is the centerpiece of the Debtor's Plan, sets forth a number of conditions to closing under the P&S and Plan confirmation, many of which are beyond the Debtor's control. To close under the P&S and thereafter fund the Plan, the Debtor must obtain certain construction approvals, subdivision approvals, consents to sublease assignments, easements and zoning approvals. While NEPCO understands the Debtor has been working to satisfy these conditions to closing and Plan funding, no one other than the Debtor has any idea on the eve of confirmation if the Debtor has been, or will soon be, able to satisfy these conditions or the likelihood that they will be satisfied to allow for closing on the sales under the P&S.

---

[1] One of two impaired classes of secured claims entitled to vote to accept or reject the Plan is comprised of the claim held by Porter W. Anderson, Jr. ("Anderson") who has agreed to accept payment of approximately $5.5 million less than he would otherwise be entitled to receive under his third-priority mortgage on Cove House. See Anderson Plan Support Agreement, Doc. 26-1, filed January 16, 2015. The Debtor scheduled Anderson's claim at $24,500,000 in Schedule D. Anderson did not file a proof of claim. NEPCO has requested documents or information in support of Anderson's claim from the Debtor (among other information) but has not received any supporting documents.

**OPPOSITION**

9.       The Plan does not satisfy 1129(a)(11) since, in its current state, it is not feasible and is likely to be followed by the liquidation or further financial reorganization of the Debtor.

10.     The Debtor's Plan is predicated, in the first instance, on a sale of the Cove House Property that will purportedly generate sufficient proceeds to pay all creditors, other than Anderson, in full.   However the Debtor has been trying to sell this property for a number of years without success.  The Debtor has not shown any reason that any party in interest should feel comfortable that the sale efforts under the Plan and P&S are likely to meet with success. The concerns are heightened where, as here, the Plan appears to provide that, in the event the Debtor does not close on the sale of the Cove House, the Debtor then gets an undetermined amount of time with no set parameters (other than requiring Court approval) to attempt to identify and close with another buyer.  Accordingly the Plan is not feasible since, absent additional information, it appears just as likely to result in further financial reorganization of the Debtors post confirmation.

11.     NEPCO believes that there is still a level of opacity obscuring the Plan that argues against Plan confirmation.   At a minimum, the Debtor should provide an updated status report to the Court and estate constituents on the progress towards, and prospects for, timely closing under the P&S to allow for a more informed consideration of the Plan.

12.     Neither NEPCO, the Court nor any of the estate's constituents really know what progress the Debtor has made to get to closing under the P&S or what issues remain open.  All parties in interest are therefore entirely dependent upon Debtor's vague assurances that progress is being made to a closing.  The uncertainty and opacity are exacerbated by what can best be

described as a moving goal line in which assurances have been made during these cases that the closing would occur sometime in January, then February, and now April.

13. As recently as last week, Debtor's principal Robert Hughes ("Hughes") filed an affidavit (the "Hughes Affidavit") in support of a motion to use cash collateral in the Chapter 11 case of a another Hughes-owned entity, In Re HCAC, West, LLC, Bankr Case No. 15-bk-10644-DS, pending in the United States Bankruptcy Court, Central District of California. In the Hughes Affidavit, Hughes states that the Debtor here anticipates that the sale of Cove House will close before June 30, 2015 and the sale of the Farm Property will close before October 31, 2015. See *Hughes Affidavit* submitted here as **Exhibit A**.[2]

14. At a minimum, the Debtor should be required to establish some firm, outside deadlines by which the sales under the Plan close and Plan consummation occurs, unless the Debtor seeks and is granted an extension of such deadlines. Absent a fixed target, there is genuine concern that all parties will find themselves in the same position they occupy today in June, July and beyond. Given the latest assurances from the Debtor and the sworn statements of Hughes in his affidavit, NEPCO would suggest that the Court set a date of May 31, 2015 for a closing on the Cove House.

15. If the Debtor cannot meet these goals, the Plan cannot go effective and parties should be able to pursue whatever course of action is available to them at that time, including without limitation, seeking relief from the stay or proposing a non-debtor plan.

16. Further, NEPCO objects to the Plan provisions that would require NEPCO to deliver discharges of its lien within five (5) days of the Effective Date of the Plan. See, Article

---

[2] *HCAC West's* exit from bankruptcy is likewise predicated on the sales of the Cove House and Farm Property in this case. Anderson has agreed to use some part of his share of those sale proceeds to purchase or otherwise satisfy the debt of the party whose threatened foreclosure on *HCAC, West's* office building asset precipitated the California bankruptcy filing.

V, Section 5.2(b).[3]  The Plan defines the Effective Date as the first Business Day after all conditions precedent to effectiveness of the Plan set forth in Section 10.1 have been satisfied or waived.  <u>See</u>, Article I, Section 1.37.  Section 10.1 does not require payment of secured claims, including NEPCO's claim, as a condition precedent to effectiveness.  Any lien discharges required should be deliverable upon payment of claims related to such liens.

## Conclusion

WHEREFORE, NEPCO respectfully requests that the Court deny confirmation of the Plan or, in the alternative, defer ruling on confirmation until the Debtor provides additional information about the status and prospects for the sale process satisfactory to all parties in interest and the Court.

New England Phoenix Co., Inc.
By its Attorney,

 /s/ Armand E. Batastini
Armando E. Batastini (BBO# 644098)
Lee Harrington (BBO# 643932)
NIXON PEABODY LLP
One Citizens Plaza
Providence, RI 02903
Tel: (401) 454-1000
Fax: (866) 680-8453

Dated:  April 10, 2015
Email:  abatastini@nixonpeabody.com
Email: lharrington@nixonpeabody.com

---

[3] Similarly, Article IV, Section 4.3(d)(ii) provides that "upon the sale of Cove House" NEPCO's lien(s) will be deemed cancelled or discharged and NEPCO will thereupon be required to deliver documents sufficient to terminate or release such lien(s).  NEPCO notes, further, that it holds a lien on the Sanderling property that is not being sold by the Debtor.  There is no basis to require NEPCO to release its lien on Sanderling prior to satisfaction of its claim.

## CERTIFICATE OF SERVICE

     I hereby certify that on the 10th day of April, 2015, this document filed through the ECF system will be sent electronically to the registered participants eligible for electronic notification as identified on the Notice of Electronic filing (NEF).

                                                     /s/   Lee Harrington